UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANISHA HOLLIS, #391365,

       Petitioner,

v.                              CASE NO. 2:11-CV-14087
                              HONORABLE PAUL D. BORMAN

MILLICENT WARREN,

       Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Michigan prisoner Tanisha Hollis ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that she is being held in violation of her constitutional rights. Petitioner was convicted of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, following a bench trial in the Wayne County Circuit Court and was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to 7 to 15 years imprisonment in 2009. In her pleadings, she raises claims concerning the sufficiency of the evidence, the effectiveness of trial counsel, and the validity of her sentence. For the reasons stated, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies Petitioner leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's conviction arises from the non-fatal stabbing of Milton Robinson, the father of her children, during an argument on a residential street near Petitioner's home in Detroit, Michigan on April 18, 2009.  The Michigan Court of Appeals described the facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant and the victim, Milton Robinson, have five children in common. All five children lived with him and his wife of three years, Tanisha Sharon Jalise Robinson (Jalise Robinson) at their home in Taylor. Robinson testified that during the early morning hours of April 18, 2009, his thirteen-year-old son called him and asked him to meet him at defendant's house in Detroit to give him a ride home. Robinson stated that he was drunk so defendant's brother or cousin dropped him off at defendant's residence. When Robinson went inside defendant was there but their thirteen-year-old son was not. Robinson testified that the next thing he remembers was waking up the following morning at defendant's residence. He stated that he wanted to leave so he kicked the door open because it was locked and he did not have a key. Robinson testified that as he began walking away from defendant's residence, defendant ran after him yelling that he was going to have to pay for her door. Robinson stated that he kept walking and said he would not pay for the door but defendant continued running after him yelling loudly. When he was about three blocks away from defendant's house, Robinson stated that he put down the bottle of beer he had with him and turned around to face defendant who was still running after him yelling about her door. As he turned around he saw defendant take a seven or eight inch knife out of her pants and swing it at him once which resulted in a stab wound to Robinson's chest. Robinson stated that his body began to shut down and he lay down on the ground. At this point he heard defendant say, "I finally got that bitch," and then, "you finna [sic] die, bitch." Robinson testified that he woke up in the hospital three months later after having surgery on his heart and lungs.
>
> Robinson further testified that he and defendant had a tumultuous relationship over many years involving arguments and reciprocal domestic violence and assaultive behavior. Robinson stated that unbeknownst to his

2

wife, he and defendant had a sexual relationship through March 2009. Robinson testified that about a month before the stabbing at issue in this case, defendant had stabbed him in his lower back. Robinson stated that he did not make a police report because of the sexual relationship with defendant and he did not want anyone to know where he was or that he had been with defendant. Robinson told his wife, Jalise Robinson, that he was attacked by someone at the gas station while he was pumping gas and did not know who did it.

Jalise Robinson stated that she had dropped defendant off at his grandmother's house at approximately 4:00 pm the day before the stabbing. Jalise Robinson testified that she was surprised to hear defendant's voice on the phone at approximately 8:30 am on April 18, 2009 because she had a new unlisted phone number. Jalise Robinson stated that she answered the phone even though it had a foreign number on the caller ID because she was expecting to hear from defendant so she could pick him up from his grandmother's house. Jalise Robinson stated that defendant said the following to her on the phone: "You need to come get your husband.... [H]e came over to my house acting belligerent, telling me who I can have in my house, I'm tired of the n-----. I'm sick, y'all. Y'all think y'all slick.... I just [stabbed] the n-----a month ago. Shit, I just had to stab him today." Jalise Robinson called the hospital and determined that her husband was in critical but stable condition at St. John Hospital. Jalise Robinson testified that she told police about the phone call she received from defendant. According to Jalise Robinson, Robinson was discharged from the hospital on July 2, 2009.

Alicia Hamilton, who does not know defendant or Robinson, lives near the corner of Hoover and Seven Mile and heard arguing on the morning of the incident. She looked outside and saw defendant and Robinson arguing in the middle of the street and continued to watch the argument unfold for about ten minutes. Hamilton stated that defendant followed Robinson telling him that he was going to fix the door he broke and Robinson kept saying "get away from me" and continued to walk away from defendant. Hamilton said defendant then had a knife in her right hand and pointed at Robinson who was about four feet away from defendant. Robinson then picked up a bottle and told defendant that if she came any closer he was going to throw the bottle at defendant. Defendant then ran toward Robinson, pulled her arm back with the knife in her right hand, and then swung the knife at Robinson. Robinson then let the bottle go and clutched his chest. Hamilton stated that Robinson attempted to walk very slowly

3

toward a gas station and defendant walked away. As defendant walked
away, Hamilton heard defendant saying that she hated Robinson and that he
was still going to fix her door.

Defendant testified on her own behalf at trial. Defendant stated that she and
Robinson had planned for him to come to her house on the evening of April
17, 2010 and that her cousin dropped Robinson off at her house. Defendant
testified that Robinson was intoxicated when he arrived at her house,
brought three 40 ounce bottles of beer with him, and spent the night at her
house. She also stated that the following morning an argument ensued when
Robinson, who was still drunk, asked her to make him sausages. Defendant
stated that she was on the phone with a friend and washing dishes in the
kitchen. According to defendant, Robinson got very angry, took her phone,
and "launched" it at the wall. Defendant testified that as she was trying to
put her phone back together Robinson began choking her over the counter.
Defendant stated that she was gasping for air and trying to fight Robinson
off when she grabbed a "little steak knife" out of the dish rack on the
counter and reached upward trying to get Robinson off of her when she
stabbed him because she was afraid for her life. She testified that she did
know she had stabbed Robinson but had no idea how badly he was hurt.
She testified that after the physical altercation Robinson took his coat,
kicked the door down, and left. Defendant stated that she followed him with
the knife still in her hand yelling at him that he was going to fix her door.
Defendant testified that she called Janise Robinson to tell her about the
relationship she had with defendant and also to tell her to come pick him
up.

Defendant was convicted, after a bench trial, of assault with intent to do
great bodily harm less than murder.

*People v. Hollis*, No. 295432, 2010 WL 5175200, *1-2 (Mich. Ct. App. Dec. 21, 2010)

(unpublished).

Following her conviction and sentencing, Petitioner filed an appeal of right with

the Michigan Court of Appeals raising the same claims presented on habeas review. The

court denied relief on those claims and affirmed Petitioner's conviction and sentence. *Id.*

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court,

which was denied in a standard order. *People v. Hollis*, 489 Mich. 935, 797 N.W.2d 639
(2011).

Petitioner thereafter filed her federal habeas petition, raising the following claims:

I.    She was denied due process and equal protection under the law as
      guaranteed by the United States Constitution and the Constitution of
      the State of Michigan when her conviction for assault with intent to
      do great bodily harm less than murder was based upon insufficient
      evidence.

II.   She was denied due process and equal protection under the law as
      guaranteed by the United States Constitution and the Constitution of
      the State of Michigan and her conviction must be reversed because
      she received ineffective assistance of counsel. Had counsel
      performed effectively the result would have been different.

III.  Her sentence is invalid because it is based upon inaccurate
      information. The judge abused his discretion by sentencing her at
      the very top of the sentencing guidelines to a minimum term of 84
      months.

IV.   Due process requires resentencing where the court enhanced her
      sentence based on facts neither admitted by her nor proven to a jury
      beyond a reasonable doubt.

Respondent has filed an answer to the petition contending that it lacks merit.

## III.   Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an
      unreasonable application of, clearly established Federal law,
      as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in
        the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas

court to 'grant the writ if the state court identifies the correct governing legal principle

from [the Supreme] Court but unreasonably applies that principle to the facts of

petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529

U.S. at 413); *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations

omitted); *Williams*, 529 U.S. at 409.  The "AEDPA thus imposes a 'highly deferential

standard for evaluating state-court rulings,' and 'demands that state-court decisions be

given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010)

(quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an

7

unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.     Analysis

### A.     Sufficiency of the Evidence Claim

Petitioner first asserts that she is entitled to habeas relief because the prosecution failed to present sufficient evidence to support her assault conviction where she testified that she stabbed the victim in self-defense.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S.

9

422, 434 (1983)).  Accordingly, the "mere existence of sufficient evidence to convict . . .

defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of assault with intent to commit great bodily

harm less than murder are:  "(1) an assault, *i.e*., an attempt or offer with force and

violence to do corporal hurt to another coupled with (2) a specific intent to do great

bodily harm less than murder."  *People v. Bailey*, 451 Mich. 657, 668-69, 549 N.W.2d

325 (1996); Mich. Comp. Laws § 750.84.  The Michigan courts have defined the intent to

do great bodily harm as "an intent to do serious injury of an aggravated nature."  *People*

*v. Mitchell*, 149 Mich. App. 36, 39, 385 N.W.2d 717 (1986).  An intent to harm the victim

can be inferred from the defendant's conduct.  *People v. Parcha*, 227 Mich. App. 236,

239, 575 N.W.2d 316 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the

prosecution presented sufficient evidence to support Petitioner's conviction for assault

with intent to commit great bodily harm less than murder.  The court explained in relevant

part:

> The facts indicate that defendant chased Robinson down the street yelling at
> him for nearly three blocks with a knife in her possession. All the while,
> Robinson repeatedly told defendant to get away from him. When Robinson
> stopped walking and turned around, defendant pulled out the knife and
> pointed it at him, threatening him. When Robinson picked up a bottle and
> told her not to come any closer defendant took that opportunity to lunge at
> Robinson with the seven or eight inch knife stabbing him in the chest.
> Hamilton, a disinterested eyewitness, witnessed the circumstances unfold
> and testified that she saw defendant run toward Robinson, pull her arm back
> with the knife in her right hand, and then swing the knife at Robinson, after
> which Robinson clutched his chest. Defendant did not attempt to get help

10

for Robinson and instead fled the scene after the stabbing. The stabbing
caused serious and life-threatening injuries to Robinson's heart and lungs
that required multiple surgeries and a hospital stay of two and a half
months. There was also evidence that defendant called Robinson's wife and
admitted to stabbing Robinson. Viewing this evidence in the light most
favorable to the prosecution, we conclude that a reasonable trier of fact
could have found beyond a reasonable doubt that defendant intended to stab
the victim in the chest with a knife. Furthermore, a rational trier of fact
could have also inferred that because defendant stabbed him with a knife, a
potentially deadly weapon, she intended to cause serious bodily injury and
harm. *See, e.g., Parcha*, 227 Mich. App. at 239, 575 N.W.2d 316; *People v.
Cunningham*, 21 Mich. App. 381, 383-384, 175 N.W.2d 781 (1970). While
defendant argues that the trial court should have believed her account of the
incident, that the stabbing occurred as the result of self-defense, "[t]his
Court will not interfere with the trier of fact's role of determining the weight
of the evidence or the credibility of witnesses." *People v. Passage*, 277
Mich. App. 175, 177, 743 N.W.2d 746 (2007).

*Hollis*, 2010 WL 5175200 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts. The victim testified that Petitioner

yelled at him about fixing her door, chased him down the street, pulled out a seven or

eight-inch knife, and stabbed him in the chest. The victim's testimony, if believed,

provided sufficient evidence of Petitioner's guilt at trial. A victim's testimony alone can

be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652,

658 (6th Cir. 2008) (citing cases). Considering the evidence in a light most favorable to

the prosecution, a rational fact-finder could conclude that Petitioner committed the assault

with the requisite intent and that she did not act in lawful self-defense given her

aggressive behavior, her use of a deadly weapon, her flight from the scene, and her

subsequent phone call to the victim's wife.

11

Petitioner essentially challenges the trial judge's view of the facts, his credibility determinations, and the inferences he drew from the trial testimony. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The trial judge's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

**B.        Effective Assistance of Trial Counsel Claim**

Petitioner next asserts that she is entitled to habeas relief because trial counsel was ineffective for failing to call her parents to testify that she voluntarily surrendered to police and for failing to produce police and medical records demonstrating her volatile relationship with the victim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance

12

prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*   "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."

13

*Harrington*, 131 S. Ct. at 788 (internal and end citations omitted).  "When § 2254(d)

applies, the question is not whether counsel's actions were reasonable.  The question is

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential

standard.  *Id.* at 788.

Applying the *Strickland* standard, the Michigan Court of Appeals concluded that

Petitioner had failed to show that trial counsel erred and/or that she was prejudiced by

counsel's conduct and denied relief on this claim.  The court stated in part:

> Defendant's first allegation of ineffective assistance of counsel is based on
> her claim that had her counsel called witnesses who could have testified that
> defendant turned herself in to police rather than being apprehended by the
> fugitive apprehension team, the outcome of her trial would have been
> different. At trial, defendant specifically testified that she turned herself in
> to police on May 1, 2009. Thereafter, the prosecutor provided a rebuttal
> witness, Kimberly Gaddies, a Detroit police officer, who testified that
> defendant did not turn herself in but was eventually arrested by the fugitive
> apprehension team. On cross-examination of Gaddies, defense counsel
> further questioned Gaddies about the specifics regarding defendant's arrest.
> Defense counsel asked several questions of Gaddies raising the inference
> that defendant actually turned herself in to the fugitive apprehension team
> in a vacant lot. When the witness got frustrated with the line of questioning,
> she stated, "Are we going to argue?" At which point, the trial court stated,
> referring to the line of questioning about whether defendant turned herself
> in or whether she was in fact apprehended, "[i]t's not even necessary, not
> even relevant." Apparently, taking a cue from the trial court, defense
> counsel ceased questioning Gaddies. The record is clear that the trial court
> was aware of the apprehension issue and found it irrelevant. This was so
> despite defense counsel's repeated efforts to place significance on
> defendant's assertion that she turned herself in to police. Again, the failure
> to call witnesses constitutes ineffective assistance only if it deprives
> defendant of a substantial defense. *Dixon*, 263 Mich. App. at 398, 688
> N.W.2d 308. On this record, defendant has not established ineffective of
> counsel with regard to this allegation when the trial court in a bench trial
> found the line of questioning irrelevant and further witnesses would not
> have provided defendant a substantial defense.

Defendant's second assertion of ineffective assistance of counsel is based on her claim that had her counsel obtained police and medical records supporting allegations that Robinson had attacked her in the past, the outcome of her trial would have been different. This claim is likewise without merit. Defendant herself testified to two previous occasions where she alleges Robinson assaulted her including beating her and "busting" her head in four places. Defendant alleged that on those occasions Robinson was drunk. She also testified that Robinson was arrested for domestic violence when he injured her head. Defendant also testified that Robinson had a reputation for being violent. She also admitted that she similarly had a reputation for being violent. Robinson also testified that the two would fight mostly when he was drunk and that he had hit defendant in the past and caused her to have a black eye. On this record, it was plain to the trial court that defendant and Robinson had a turbulent and often violent relationship. The outcome of the proceedings would not be different when the claimed deficiency involves the failure to seek admission of cumulative evidence.

*Hollis*, 2010 WL 5175200 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to calling witnesses to testify that Petitioner turned herself in, trial counsel may have reasonably determined that it would be futile to call those witnesses and/or that their testimony would not benefit the defense given the trial court's ruling that the issue was irrelevant. Counsel's strategy was appropriate under the circumstances. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Moreover, Petitioner has not shown that such testimony would have affected the outcome at trial or sentencing given the tangential nature of the proposed testimony, the significant

15

evidence of guilt presented at trial, Petitioner's habitual offender status, and the fact that Petitioner was sentenced within the guideline range. Petitioner has failed to establish that trial counsel erred and/or that she was prejudiced by counsel's conduct.

Second, as to the police and medical records, trial counsel may have reasonably determined that such additional information was unnecessary given the trial testimony from Petitioner, Janice Bowman, and the victim describing the volatile relationship between Petitioner and the victim. Counsel may have also been reluctant to produce such records given that they could include information about Petitioner's own improper conduct which would be detrimental to the defense. In any event the court was well aware of the tumultuous and violent nature of the parties' relationship. Petitioner has not shown that trial counsel erred and/or that she was prejudiced by counsel's conduct. She has thus failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### C.    Sentencing Claims

Lastly, Petitioner asserts that she is entitled to habeas relief because her sentence is invalid and the trial court abused its discretion by sentencing her at the top of the minimum guideline range. In particular, she claims that her sentence is disproportionate and based upon inaccurate information, and that the trial court relied upon facts neither admitted by her nor proven beyond a reasonable doubt in imposing sentence.

As an initial matter, the Court notes that Petitioner's sentence is within the statutory maximum of 15 years imprisonment for a second habitual offender. *See* MICH.

16

COMP. LAWS §§ 750.84, 769.10.  A sentence within the statutory limit is generally not subject to federal habeas review.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  Claims which arise out of a state court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.  *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner makes no such showing.  Her sentence is within the statutory maximum set by state law.

Petitioner asserts that her sentence is disproportionate and based upon inaccurate information because the trial court did not properly account for the nature of her relationship with the victim.  The Michigan Court of Appeals denied relief on this claim finding that the trial court did not abuse its discretion, that Petitioner was properly sentenced with the guideline range, that her sentence was proportionate, and that her sentence was based upon accurate information.  *Hollis*, 2010 WL 5175200 at *5.

The state court's denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, to the extent that Petitioner claims that her sentence is disproportionate or otherwise invalid under state law, she is not entitled to relief.  Habeas relief does not lie for perceived state law errors.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).  She is also not entitled to relief on any claim that her sentence constitutes cruel and unusual punishment under the Eighth Amendment.  The United

17

States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302. Petitioner's sentence is within the sentencing guidelines, as well as the statutory maximum. The state court thus acted within its discretion in imposing sentence and there is no extreme disparity between Petitioner's crime and sentence so as to offend the Eighth Amendment.

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, a petitioner must show that the trial judge relied on the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner has not done so. The record reflects that the trial court considered the circumstances of the crime, Petitioner's history and criminal record, and other permissible factors at sentencing. Petitioner had an opportunity to contest the accuracy of the reports and make a statement at sentencing. Petitioner has not shown that the court relied upon materially false or inaccurate information in imposing her sentence which she had no opportunity to correct.

Petitioner also asserts that the trial court relied upon facts neither admitted by her nor proven beyond a reasonable doubt in imposing her sentence in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). The Michigan Court of Appeals denied relief on this claim finding that *Blakely* is inapplicable to Michigan's indeterminate sentencing scheme. *Hollis*, 2010 WL 5175200 at *6.

The state court's denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The United States Court of Appeals for the Sixth Circuit has held that Michigan's sentencing guidelines do not violate the Sixth Amendment because they set a minimum sentence range while the maximum is set by statute. *See Montes v. Trombley*, 599 F.3d 490, 494–98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009); *see also People v. Harper*, 479 Mich. 599, 644-45, 739 N.W.3d 523 (2007); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778 (Mich. 2006). This Court is bound by those decisions. Because Petitioner's sentence is within the statutory maximum penalty, which was not enhanced by judicial fact-finding, no Sixth Amendment or due process violation occurred. Petitioner has failed to show that her sentence is unconstitutional. Habeas relief is not warranted on these claims.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on her claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue.  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to her claims.  The Court therefore **DENIES** a certificate of appealability.

Lastly, the Court concludes that Petitioner should not be allowed to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith.  FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 26, 2013

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 26, 2013.

s/Deborah R. Tofil

Deborah R. Tofil
